UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONTENT ROBINSON-DOUGLAS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COASTAL INTERNATIONAL )<br>SECURITY, INC., )<br>)<br>Defendant. ) | Civil Case No. 16-1523 (RJL) |

**FILED**
**FEB 21 2018**
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

<u>**MEMORANDUM OPINION**</u>
(February 20, 2018) [Dkt. # 12]

Plaintiff Content Robinson-Douglas ("plaintiff") brings this action against her former employer, defendant Coastal International Security, Inc. ("defendant" or "Coastal") to challenge her allegedly unlawful termination. In her amended complaint, plaintiff contends that Coastal violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the D.C. Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 *et seq.*, by discriminating against her on the basis of sex and retaliating against her for engaging in statutorily protected activities. *See generally* Am. Compl. [Dkt. # 16].

Coastal counters that plaintiff was terminated not on the basis of sex or as an act of retaliation, but because plaintiff failed a security test and committed various infractions of company policy while stationed as a security guard at the Department of Commerce ("DOC"). *See* Def.'s Mot. Summ. J. ("Def.'s Mot.") 1 [Dkt. # 12]. Coastal has thus moved for summary judgment on all claims. Upon consideration of the parties' submissions and the entire record, defendant's motion for summary judgment is GRANTED.

## BACKGROUND

Coastal provides security services to government agencies including, as relevant here, the DOC. *See* Def.'s Mot. App. A, Decl. of Josephine Coker ("Coker Decl.") ¶ 2 [Dkt. # 12-2]. At the time of the events set out in the amended complaint, Coastal served as a subcontractor for the COGAR Group ("COGAR"), which was the DOC's prime security contractor. *See* Def.'s Mot. App. B, Decl. of John Spray ("Spray Decl.") ¶ 2 [Dkt. # 12-3]. Individuals from DOC, COGAR, and Coastal were together responsible for supervising the relevant security operations at DOC. Those supervisors included John Spray, Coastal's Deputy Program Manager for the DOC contract; Charles Mayfield, the Program Manager for COGAR; Ray Wallace, COGAR's Special Police Officer in charge at DOC; and William Smith, the DOC employee who served as the Contracting Officer Technical Representative. *See id.* ¶¶ 1, 3.

Plaintiff worked for Coastal as a special police officer at the DOC. *See* Def.'s Mot. App. C, Dep. of Content Robinson-Douglas ("Pl.'s Dep.") 11:8-11 [Dkt. # 12-4]. In that role, plaintiff was responsible for manning her station in accordance with the applicable regulations and policies, ensuring that individuals accessing the building had the requisite credentials, and detecting suspicious or criminal activities near her post. *See* Spray Decl. ¶ 5. In light of the special police officers' duties, it is no surprise that Coastal maintains written policies prohibiting officers on duty from possessing or using cell phones, reading unofficial material, or eating or drinking at their posts. *Id.* ¶ 8; *see also id.* Ex. B; *id.* Ex. C. Indeed, Coastal officers are subject to immediate discharge for "[v]iolations of general or specific Post Orders or directives to include, but not limited to, inattention to duty" or

"[n]eglect of duty, which could cause a claim or penalty to be assessed against" Coastal. Spray Decl. ¶ 8.

To ensure that special police officers are fulfilling their security functions, the Government conducts periodic "intrusion tests" during which undercover employees attempt to gain access to the Government facility without proper credentials or while in possession of a prohibited item. *Id.* ¶ 9. Coastal policy provides that an officer who unintentionally fails an intrusion test is subject to a five day suspension and refresher training. *See id.*; *id.* Ex. B, Mem. from Coastal Int'l Sec. Human Res. to Coastal Employees (Sept. 1, 2011). On the morning of March 29, 2016, the DOC Office of Security performed an intrusion test to evaluate officers' ability to "enforce access control policies" at the tunnel entrance to the DOC's Herbert C. Hoover Building, where plaintiff was then stationed. Spray Decl. ¶ 10. DOC Office of Security employee Sheryl Hollins ran the test; Spray, Mayfield, and Wallace observed the test from the DOC command center. *Id.* ¶¶ 10-11; *see also* Spray Decl. Ex. E ("Intrusion Test Report").

To say the least, plaintiff did not fare well on the intrusion test. Specifically, plaintiff granted facility access to an undercover individual with an "expired agency identification (ID) badge with a photo bearing no resemblance to the tester." Intrusion Test Report 2. Following the exercise, plaintiff was informed that she had failed the intrusion test and was immediately removed from her post. *See* Spray Decl. ¶ 12; Pl.'s Dep. 61:19-22. Pursuant to Coastal's policy, Spray met with plaintiff to explain that she would be suspended for five days and would need to complete a refresher training course prior to returning as a security officer. *See* Pl.'s Dep. 63:2-13; Spray Decl. ¶ 12.

3

Plaintiff requested to view the video footage of the test, but was denied permission to do so by DOC. Spray Decl. ¶ 13. Her request, however, prompted Smith and Mayfield to review the footage themselves. *Id.*; *see also* Spray Decl. Ex. G ("Mayfield Statement"). Their review of the morning's events showed that, in addition to failing the intrusion test, plaintiff had committed numerous violations of DOC, COGAR, and Coastal policy while at her post. Plaintiff's violations included: 1) using her cell phone for over seven minutes; 2) exchanging money for food; and 3) standing with her back to the tunnel entrance, which prevented her from facing approximately fifty-seven employees who entered the building during that time period. Mayfield Statement 1; Spray Decl. ¶ 14. According to DOC and COGAR, plaintiff's conduct was so neglectful that it amounted to her post being "open" or unstaffed on the morning in question. Spray Decl. ¶ 15; *see also* Mayfield Statement 1-2. As a result, DOC refused to pay Coastal for staffing plaintiff's post and further requested (along with COGAR) plaintiff's immediate removal from the DOC contract. Spray Decl. ¶¶ 15-16; *id.* Ex. H.

On April 5, 2016, Coastal suspended plaintiff indefinitely while it investigated plaintiff's conduct and evaluated DOC and COGAR's request to remove plaintiff from the contract. *See* Spray Decl. ¶ 17; *id.* Ex. J. Spray reviewed the surveillance video and a statement from COGAR employee Mayfield, in which Mayfield catalogued plaintiff's numerous violations and requested plaintiff's removal from the contract. Spray Decl. ¶ 18; *see generally* Mayfield Statement. Spray's review of those documents, along with the fact that DOC had penalized Coastal for an open post based on plaintiff's conduct, led Spray to conclude that plaintiff should be terminated. *See* Spray Decl. ¶ 18; *see also id.* Ex. K. At

the time of that conclusion, Spray states that he was "not aware that Plaintiff had filed any Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC"). Spray Decl. ¶ 19.

Spray submitted his termination recommendation to Coastal's parent corporation, The Akal Group ("Akal"), which had the ultimate responsibility for finalizing all termination decisions. *See id.* ¶ 18; Coker Decl. ¶ 3. The matter was assigned to Josephine Coker, an Akal human resources manager. Coker Decl. ¶¶ 1, 4. After reviewing Spray's report, Coker agreed that plaintiff should be terminated and recommended that course of action to Janet Gunn, Akal's Chief Administrative Officer. *Id.* ¶¶ 3-5. On April 12, 2016, Gunn approved plaintiff's termination pending Coker's personal review of the surveillance video. *Id.* ¶ 5. One week later, after Coker's review of the video, Gunn gave the final approval to terminate plaintiff. *Id.* ¶ 6. Plaintiff was informed of that decision by letter dated April 20, 2016. *See id.* Ex. C.

According to Coker, neither she nor Gunn had any knowledge of any DOC EEOC charge filed by plaintiff at the time of the termination decision. *See id.* ¶ 12. Rather, Coker asserts that the termination decision was based on "violations of policies and procedures, including but not limited to: Negligence; Neglect of duty; Inattention to duty; Failure to follow security procedures; Personal cellular telephone on post; Disregarding orders; Socializing/fraternizing on duty; Food/drink on post; Failure to be alert to [the] environment or surroundings. Loss of confidence." *Id.* ¶ 6; *see also id.* Ex. B. Since January 2014, Coker states that Coastal has terminated nine other employees—four males and five females—for similar violations. *See* Coker Decl. ¶ 16.

5

Plaintiff tells a different story—or stories, more accurately—regarding her termination. At her deposition and in a charge she filed with the National Labor Relations Board ("NLRB"), plaintiff stated that her termination occurred because of her union steward activities and, specifically, a confrontation she had with Wallace on the morning of the intrusion test. *See* Pl.'s Dep. 109:11-110:3, 110:14-21; *see also id.* Ex. 1 (NLRB charge alleging that termination occurred because of plaintiff's "activities on behalf of the union"). By contrast, plaintiff's amended complaint alleges that her termination was based on retaliation for an EEOC charge allegedly filed on April 15, 2016, but of which there is no record. Am. Compl. ¶¶ 14, 25. Finally, plaintiff asserts that her termination was an act of sex discrimination, alleging that she was treated more harshly than male Coastal employees who failed intrusion tests. *Id.* ¶¶ 13, 19.

On April 26, 2016, six days after her termination, plaintiff filed a formal complaint with the EEOC. *Id.* ¶16. She received a right to sue letter that same day. *See* Pl.'s Dep. 126:1-5. Plaintiff then filed her complaint in this Court on July 26, 2016, receiving leave to amend the complaint on January 19, 2018. *See* 1/19/2018 Mem. Order [Dkt. # 15]. In her amended complaint, plaintiff alleges that Coastal violated Title VII and the DCHRA by terminating her on the basis of sex and as retaliation for protected employment activities. *See* Am. Compl. ¶¶ 17-38.

## STANDARD OF REVIEW

A party is entitled to summary judgment when the pleadings, discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). A fact is "material" if it "may affect the outcome of the litigation." *Montgomery v. Risen*, 875 F.3d 709, 713 (D.C. Cir. 2017). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant bears the initial burden of identifying evidence that demonstrates that there is no genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A movant can satisfy that burden by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish" the "presence of a genuine dispute." Fed. R. Civ. P. 56(c). If the party moving for summary judgment meets its initial burden, then the nonmoving party—here, plaintiff—must identify the "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted). If the nonmoving party fails to proffer evidence to support its assertions, then the moving party may prevail by citing that "failure of proof." *Id.* at 323.

When evaluating a summary judgment motion, a court must "examine the facts in the record and all reasonable inferences derived therefrom in a light most favorable to the nonmoving party." *Robinson v. Pezzat*, 818 F.3d 1, 8 (D.C. Cir. 2016) (internal quotation marks omitted). To establish a genuine dispute of material fact sufficient to defeat summary judgment, however, the nonmoving party must come forward with more than "a scintilla of evidence" or the "mere allegations or denials" of her pleadings. *Anderson*, 477 U.S. at 248, 252.

## ANALYSIS

In her amended complaint, plaintiff claims that Coastal violated Title VII and the DCHRA by discriminating against her on the basis of sex and retaliating against her for complaints she made about her superiors.[1] Coastal has moved for summary judgment on all counts. *See* Def.'s Mot. 1. For the reasons discussed below, Coastal is entitled to summary judgment on plaintiff's discrimination and retaliation claims.[2]

### A. Sex Discrimination Claims

Title VII makes it unlawful for an employer to "discharge" or otherwise discriminate against any individual with respect to "compensation, terms, conditions, or privileges of employment" because of that individual's "sex." 42 U.S.C. § 2000e-2(a)(1). In her amended complaint, plaintiff alleges that Coastal violated Title VII's prohibition by terminating her on the basis of sex. *See* Am. Compl. Cts. I, III. Coastal counters that it had a legitimate, non-discriminatory basis for its decision—namely, plaintiff's myriad violations of company policy, which resulted in Coastal's penalization and a joint DOC-

---

[1] When it comes to prohibiting discrimination and retaliation, the DCHRA "uses almost precisely the same language" as Title VII. *Thomas v. District of Columbia*, 209 F. Supp. 3d 200, 204 (D.D.C. 2016). Thus, "[w]hen presented with a suit alleging violations of each law, courts generally evaluate the claims under Title VII jurisprudence." *Id.*; *see also Carpenter v. Fed. Nat'l Mortg. Ass'n*, 165 F.3d 69, 72 (D.C. Cir. 1999) (noting that District of Columbia courts follow the burden-shifting test applicable to Title VII claims when evaluating DCHRA claims and "seem[] ready to accept the federal constructions of Title VII, given the substantial similarity between it and the D.C. Human Rights Act"). I take the same approach here and analyze plaintiff's Title VII and DCHRA claims together under the applicable federal standards.

[2] In arguing for summary judgment, Coastal correctly notes that plaintiff filed this action one day after the ninety-day time limit established by Title VII. *See* Mem. Supp. Def.'s Mot. 15-16 [Dkt. # 12-1] (citing 42 U.S.C. § 2000e-5(f)(1)). Plaintiff's former counsel acknowledged and took responsibility for that mistake, ultimately moving (and receiving permission) to withdraw from the representation due to a conflict with plaintiff. *See* Pl.'s Counsel's Mot. to Withdraw [Dkt. # 8]. While the motion to withdraw was pending, plaintiff, acting *pro se*, served Coastal with her opposition to Coastal's motion for summary judgment; that opposition was later docketed. *See* Dkt. # 17-1. For the reasons discussed below, even assuming that plaintiff's Title VII claims were timely filed, those claims clearly lack merit and indeed are controverted by plaintiff's own deposition testimony. *See infra* pp. 9-10.

COGAR request to remove plaintiff from the contract. *See* Mem. Supp. Def.'s Mot. 16-18. At the present juncture, this Court must resolve one central question: Has plaintiff "produced sufficient evidence for a reasonable jury to find" that Coastal's "asserted non-discriminatory reason was not the actual reason" for plaintiff's termination and that she instead was "intentionally discriminated against" on the basis of sex? *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). The answer is clearly no.

The bottom line is that plaintiff has failed to identify *any* evidence that calls into question Coastal's asserted non-discriminatory reason for plaintiff's termination. To start, plaintiff was not able to identify the final decisionmakers in her case—much less tie those decisionmakers to any discriminatory motive. *See* Pl.'s Dep. 60:9-11. She has not disputed or questioned Coastal's evidence, which shows that a number of employees—both male and female—were terminated for violations similar to those plaintiff committed. *See* Coker Decl. ¶ 16 (recounting each terminated employee's name, sex, and violations). Nor has plaintiff alleged that any other male employee in her situation—that is, one who "(a) failed an intrusion test; (b) had a prime contractor or government client request their removal from the contract; and (c) caused Coastal to be penalized for an open post"—was treated more favorably than plaintiff. *Id.* ¶ 17.

Perhaps most importantly, plaintiff's own statements belie the notion that sex discrimination was the reason for her termination. During her deposition, plaintiff testified that she thought she was terminated "because of [her] *union activities*." Pl.'s Dep. 18:9-11 (emphasis added). When counsel asked if there were "any other reasons," plaintiff responded, "[u]nion steward retaliation, yeah. That's it." *Id.* at 110:14-21. That testimony

9

mirrors statements plaintiff made in a labor charge she filed with the NLRB. *See* Pl.'s Dep. Ex. 1. In the final analysis, then, plaintiff has failed to support an inference that sex discrimination, rather than Coastal's "asserted non-discriminatory reason," was the "actual reason" for her termination. *Brady*, 520 F.3d at 494. Her sex discrimination claims therefore fail as a matter of law.

### B. Retaliation Claims

In addition to outlawing status-based discrimination, Title VII also precludes employers from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by" Title VII or "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). As the text of the anti-retaliation provision indicates, it covers only those situations in which an employee has opposed a practice "that could reasonably and in good faith be regarded as unlawful under Title VII." *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2522 (2013). To establish unlawful retaliation, moreover, an employee must put forward evidence indicating that the employer-decisionmakers "had knowledge of" the employee's protected activity at the time of the challenged employment action. *Jones v. Bernanke*, 557 F.3d 670, 679 (D.C. Cir. 2009). Plaintiff has failed to satisfy those threshold requirements. How so?

Plaintiff's primary contention is that Coastal retaliated against her for confronting Wallace—a COGAR employee—for his use of Smith's office. *See* Pl.'s Dep. 109:11-110:3. Plaintiff concedes, however, that she never reported that confrontation to anyone.

10

*See id.* at 47:2-7. Even if she had, Wallace's allegedly improper use of Smith's office is not an "unlawful employment practice" for purposes of Title VII—nor could it "reasonably and in good faith be regarded" as such. *McGrath*, 666 F.3d at 1380. Thus, plaintiff's confrontation with Wallace cannot form the basis of a Title VII retaliation claim. *Cf. Robbins v. District of Columbia*, 67 F. Supp. 3d 141, 146-47 (D.D.C. 2014) (collecting cases for proposition that "union grievances and general complaints about unfair treatment do not constitute protected activity under Title VII").

In her amended complaint, plaintiff asserts, for the first time, that in addition to her post-termination EEOC charge dated April 26, 2016, she filed a pre-termination EEOC charge on April 15, 2016. *See* Am. Compl. ¶ 14. Unlike her confrontation with Wallace, the filing of an EEOC complaint is clearly activity protected under Title VII's retaliation provision. Plaintiff, however, has failed to document her alleged complaint, and there is no record evidence of it. *See* Def.'s Reply 6. Plaintiff's failure of proof aside, any retaliation claim based on the unsubstantiated April 15, 2016 EEOC complaint would fail for a second set of reasons: The initial determination to terminate plaintiff came on April 12, 2016—three days *prior* to plaintiff's alleged April 15, 2016 EEOC complaint—and there is no evidence to rebut the relevant decisionmakers' assertions that they were unaware of the complaint when finalizing plaintiff's termination one week later. *See* Spray Decl. ¶¶ 19-20; Coker Decl. ¶¶ 5, 8, 12. It is common sense that plaintiff's "supervisors could not have retaliated against [her] unless they had knowledge of [her] protected activity." *Jones*, 557 F.3d at 679. Plaintiff's failure to proffer evidence that the final decisionmakers were aware of any protected activity by plaintiff at the time of the termination therefore

11

precludes her retaliation claims.[3] For the same reason, it follows that plaintiff has failed to show that Coastal's asserted non-discriminatory basis for the termination was a pretext for unlawful retaliation. *See supra* pp. 8-9.

## CONCLUSION

This is yet another example of an employee seeking to use Title VII of the Civil Right Act as a sword to extract a settlement or at a minimum to recast conduct that so meritoriously warranted their termination. Congress would do well to consider how to best minimize such abuses of Title VII in the years to come. For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment. An Order consistent with this decision accompanies this Memorandum Opinion.

*[signature]*

RICHARD J. LEON
United States District Judge

---

[3] It appears as though plaintiff may have filed an EEOC complaint against Coastal in early 2015. *See* Coker Decl. ¶¶ 9-10. Plaintiff, however, could not recall filing that complaint or discussing it with anyone, and does not rely on the 2015 EEOC charge to support the retaliation claims contained within her amended complaint. *See* Pl.'s Dep. 132:2-133:1; Am. Compl.